WOODHOUSE FORD, INC., A NEBRASKA CORPORATION, APPELLANT,
v. D.M. LAFLAN AND CATHY LAFLAN, APPELLEES.

687 N.W.2d 672

Filed October 15, 2004.   No. S-03-574.

Jon A. Sedlacek and Kathy Pate Knickrehm for appellant.

James R. Villone, of Klass Law Firm, and Sharese Manker, Senior Certified Law Student, for appellees.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

WRIGHT, J.

## NATURE OF CASE

The Washington County District Court sustained a motion for summary judgment filed by the defendants, D.M. Laflan (Douglas) and Cathy Laflan. The plaintiff, Woodhouse Ford, Inc. (Woodhouse), appeals from an order of the district court which denied its motion for new trial.

## SCOPE OF REVIEW

■ When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court. *Demerath v. Knights of Columbus, ante* p. 132, 680 N.W.2d 200 (2004).

■ In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Keys v. Guthmann*, 267 Neb. 649, 676 N.W.2d 354 (2004).

■ A motion for new trial is addressed to the discretion of the trial court, whose decision will be upheld in the absence of an abuse of that discretion. *In re Petition of Omaha Pub. Power Dist., ante* p. 43, 680 N.W.2d 128 (2004).

## BACKGROUND

This appeal arose from a dispute concerning a 2002 F-150 Ford pickup truck that came off the Woodhouse lot. According to the Laflans, on or about December 22, 2001, the truck was delivered to Cathy's son in Omaha, Nebraska. The son subsequently drove the truck to the Laflans' home in Creighton.

The parties disagree as to why the truck was delivered. According to Woodhouse, the Laflans had entered into a purchase agreement in which they agreed to pay $31,878 for the truck. The Laflans deny purchasing the truck and deny signing

any agreement. They have not paid any money to Woodhouse for the truck.

The Laflans contend that a few days prior to December 21, 2001, Cathy contacted Woodhouse and requested that it deliver the truck to Douglas for his inspection and approval prior to purchase. According to Douglas, he first test drove the truck on December 27, during a trip to Tilden. There is no dispute that while Douglas was driving the truck on this day, it was involved in an accident. Douglas had the damage to the truck repaired. According to the Laflans, Woodhouse has repeatedly refused to accept the truck, despite numerous attempts on their part to return it. As of October 2002, the truck was being stored at the Laflans' home.

On June 5, 2002, Woodhouse filed a petition against the Laflans seeking the recovery of $31,878, together with interest and costs. Woodhouse argued this amount was owed under the purchase agreement. The Laflans claimed that they never entered into a purchase agreement and that the agreement offered by Woodhouse was unenforceable because it violated the statute of frauds.

The Laflans moved for summary judgment on the basis that Woodhouse was attempting to enforce an oral contract for the sale of goods in excess of $500 and that the contract was unenforceable. At the summary judgment hearing on December 3, 2002, Woodhouse attempted to offer the affidavit of a salesman who claimed to have negotiated the purchase of the truck. Counsel for the Laflans objected to admission of the affidavit on the basis that it was untimely. The district court took the matter under consideration.

On January 24, 2003, the district court sustained the Laflans' objection to the affidavit and granted summary judgment in favor of the Laflans. Woodhouse moved for a new trial, claiming that the Laflans' responses to its discovery requests constituted newly discovered evidence which justified a new trial. The district court overruled Woodhouse's motion for new trial, and Woodhouse timely appealed.

## ASSIGNMENTS OF ERROR

Woodhouse assigns the following restated errors: (1) the district court's sustaining the Laflans' objection to the affidavit of a

Woodhouse salesman, (2) the court's granting the Laflans' motion for summary judgment, and (3) the court's denial of Woodhouse's request for a new trial.

## ANALYSIS

### JURISDICTION

■ We first point out to the practitioner that a motion which purportedly seeks a "new trial" after the entry of a summary judgment is not a proper motion for new trial. A new trial is a reexamination in the same court of an issue of fact after a verdict by a jury, report of a referee, or a trial and decision by the court. Neb. Rev. Stat. § 25-1142 (Cum. Supp. 2002); *Central Neb. Pub. Power v. Jeffrey Lake Dev.*, 267 Neb. 997, 679 N.W.2d 235 (2004). When a party files a motion for summary judgment, the trial court determines whether there is a material issue of fact in dispute. It does not resolve factual issues. Therefore, Woodhouse's motion following the entry of summary judgment was not a proper motion for new trial under § 25-1142, which would toll the time for filing a notice of appeal. See *Central Neb. Pub. Power v. Jeffrey Lake Dev., supra.*

■ However, a postjudgment motion must be reviewed based on the relief sought by the motion, not based on the title of the motion. When the statutory basis for a motion challenging a judgment on the merits is unclear, the motion may be treated as a motion pursuant to Fed. R. Civ. P. 59(e). See, *U.S. v. Deutsch*, 981 F.2d 299 (7th Cir. 1992); *Central Neb. Pub. Power v. Jeffrey Lake Dev., supra.* A rule 59(e) motion seeks to alter or amend the judgment. *Id.*

Woodhouse's motion asked the district court to grant a new hearing based upon newly discovered evidence. This motion is similar to a motion for reconsideration, which the federal courts have held is the functional equivalent of a motion to alter or amend the judgment pursuant to rule 59(e). See *Central Neb. Pub. Power v. Jeffrey Lake Dev., supra.* We therefore treat Woodhouse's motion as a motion to alter or amend the judgment pursuant to Neb. Rev. Stat. § 25-1329 (Cum. Supp. 2002).

In cases involving a motion to alter or amend the judgment, a critical factor to be considered is whether the motion was filed

within 10 days of the order granting summary judgment, because a timely motion under § 25-1329 tolls the time for filing a notice of appeal. Since the motion in the case at bar was timely filed, we have jurisdiction of this matter.

## WOODHOUSE AFFIDAVIT

Woodhouse first argues that the district court erred in sustaining the Laflans' objection to the admission of the affidavit of the Woodhouse salesman. The affidavit was served upon the Laflans on the day of the summary judgment hearing. While Woodhouse admits that the affidavit was offered in an untimely manner, it argues that this timing did not prejudice the Laflans.

Neb. Rev. Stat. § 25-1332 (Cum. Supp. 2002) provides in part that "[t]he adverse party prior to the day of hearing may serve opposing affidavits." Woodhouse argues that because the statute uses the word "may," the court has discretion to admit an affidavit on the day of the hearing. It contends that since service of the affidavit on the day of the summary judgment hearing did not prejudice the Laflans, the district court abused its discretion in sustaining their objection.

When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court. *Demerath v. Knights of Columbus, ante* p. 132, 680 N.W.2d 200 (2004). Statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous. *In re Guardianship & Conservatorship of Woltemath, ante* p. 33, 680 N.W.2d 142 (2004).

The plain, direct, and unambiguous meaning of the language of § 25-1332 is that parties adverse to a motion for summary judgment may serve opposing affidavits prior to the day of the summary judgment hearing. See *Medley v. Davis*, 247 Neb. 611, 529 N.W.2d 58 (1995). While adverse parties are not required to file opposing affidavits, if they choose to do so, § 25-1332 requires them to serve those affidavits prior to the day of the hearing. *Medley v. Davis, supra*; *Barelmann v. Fox*, 239 Neb. 771, 478 N.W.2d 548 (1992); *Center Bank v. Mid-Continent Meats, Inc.*, 194 Neb. 665, 234 N.W.2d 902 (1975).

The district court correctly utilized the plain and ordinary meaning of the language in § 25-1332 when it sustained the Laflans' objection to the affidavit. We cannot say that the court erred in refusing to admit the affidavit. Woodhouse's first assignment of error lacks merit.

## SUMMARY JUDGMENT

Woodhouse claims that the district court erred in sustaining the Laflans' motion for summary judgment. Specifically, Woodhouse contends that the Laflans failed to meet their burden to show that no issue of fact existed concerning the exceptions to the statute of frauds.

The statute of frauds provision in Neb. U.C.C. § 2-201(1) (Reissue 2001) states:

> Except as otherwise provided in this section a contract for the sale of goods for the price of five hundred dollars or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought . . . .

The purchase price of the truck was $31,878. As such, if there was a contract for sale of the truck, it would have to conform with the statute of frauds. The purchase agreement offered by Woodhouse was not signed by either of the Laflans. Therefore, in order to conform with the statute of frauds, the purchase agreement must fall under one of the limited exceptions set forth in § 2-201(3).

Section 2-201(3) states: "A contract which does not satisfy the requirements of subsection (1) but which is valid in other respects is enforceable . . . (c) with respect to goods for which payment has been made and accepted or which have been received and accepted." Neb. U.C.C. § 2-606(1)(c) (Reissue 2001) defines the acceptance of goods as occurring when the buyer "does any act inconsistent with the seller's ownership."

The party moving for summary judgment has the burden to show that no genuine issue of material fact exists and must produce sufficient evidence to demonstrate that it is entitled to judgment as a matter of law. *Misle v. HJA, Inc.*, 267 Neb. 375, 674 N.W.2d 257 (2004). After the movant for summary judgment

makes a prima facie case by producing enough evidence to demonstrate that the movant is entitled to judgment if the evidence were uncontroverted at trial, the burden to produce evidence showing the existence of a material issue of fact that prevents judgment as a matter of law shifts to the party opposing the motion. *Id.*

Douglas' affidavit offered at the summary judgment hearing stated that neither he nor Cathy ever entered into any oral or written agreement for the purchase of a truck from Woodhouse. A truck was delivered to Cathy's son, who drove the truck to the Laflans' home. On December 27, 2001, Douglas took the truck for a test drive. He was involved in an accident and had the damage to the truck repaired. He attempted to return the truck, and Woodhouse refused to accept it. Woodhouse continues to refuse to accept the truck despite repeated attempts to return it.

This evidence established that no purchase agreement conforming to § 2-201(1) existed between Woodhouse and the Laflans. The Laflans' attempts to return the truck indicated that they never accepted it within the definition of § 2-606(1)(c). Therefore, the Laflans established a prima facie case for summary judgment.

The burden then shifted to Woodhouse to show the existence of a material issue of fact that would prevent a judgment in favor of the Laflans. Woodhouse offered no evidence to dispute the assertions of the Laflans that they did not purchase or accept the truck. Attached to Woodhouse's petition was the purchase agreement that Woodhouse was attempting to enforce. However, since that document was not signed by either of the Laflans, it was unenforceable unless one of the limited exceptions set forth in § 2-201(3) was present.

Woodhouse's attorney argued that there had been "partial performance or performance" under the terms of the purchase agreement, which waived consideration of the statute of frauds. Counsel also claimed that the Laflans took possession of the truck, test drove it, and had it in their possession for "numerous days." However, these assertions were not supported by any evidence in the record. Indeed, the only indication that the Laflans had the truck for "numerous days" was Douglas' affidavit, which stated that the truck was being stored in his garage. This

statement was consistent with other language from the affidavit which asserted that Woodhouse had refused to accept the truck despite continued attempts to return it.

Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Keys v. Guthmann*, 267 Neb. 649, 676 N.W.2d 354 (2004). In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Id.*

Viewing the evidence in a light most favorable to Woodhouse and granting it the benefit of all reasonable inferences deducible from the evidence, we cannot say that Woodhouse sustained its burden to establish that there was a genuine issue of material fact. The purchase agreement offered by Woodhouse was not signed by either of the Laflans. Woodhouse presented no evidence that placed any alleged agreement with the Laflans outside the requirements of the statute of frauds. As such, the district court did not err in sustaining the Laflans' motion for summary judgment.

### MOTION FOR NEW TRIAL

Finally, Woodhouse argues that the district court erred in failing to sustain its motion for new trial. A motion for new trial is addressed to the discretion of the trial court, whose decision will be upheld in the absence of an abuse of that discretion. *In re Petition of Omaha Pub. Power Dist.*, ante p. 43, 680 N.W.2d 128 (2004). A judicial abuse of discretion exists when a judge, within the effective limits of authorized judicial power, elects to act or refrain from action, but the selected option results in a decision which is untenable and unfairly deprives a litigant of a substantial right or a just result in matters submitted for disposition through the judicial system. *Id.*

Section 25-1142 sets forth the grounds upon which a new trial may be granted. Woodhouse argues that it should have a new trial based upon § 25-1142(7), which allows for a new trial on the

basis of "newly discovered evidence, material for the party applying, which the moving party could not, with reasonable diligence, have discovered and produced at the trial."

The evidence that Woodhouse offered in its motion for new trial was the Laflans' responses to its discovery requests. These responses were mailed to Woodhouse on December 3, 2002, the day of the summary judgment hearing. Woodhouse claims that the responses were material to the issues in the case and would have been utilized at the hearing in support of its opposition to the Laflans' motion for summary judgment.

> As a general rule, in order to make a sufficient showing for a new trial on the grounds of newly discovered evidence, the proof in support thereof must show that such evidence is now available which neither the litigant nor counsel could have discovered by the exercise of reasonable diligence and that the evidence is not merely cumulative, but competent, relevant, and material, and of such character as to reasonably justify a belief that its admission would bring about a different result if a new trial were granted.

*DeVaux v. DeVaux*, 245 Neb. 611, 621-22, 514 N.W.2d 640, 647 (1994).

Woodhouse's discovery requests included a request for production of documents, a request for admissions, and written interrogatories. The Laflans' responses contained some evidence that was relevant and material to the issues in the case. The Laflans produced the police report from the accident that occurred on December 27, 2001. This report showed that Douglas told the police officer who filed the report that he owned the truck in question. In answer to one of the interrogatories, the Laflans stated that as of November 2002, the truck had 647.6 miles on its odometer. This was an increase of more than 530 miles from the odometer reading listed on the purchase agreement attached to Woodhouse's petition. Finally, one of the interrogatories revealed that the Laflans' insurance agent processed a claim with regard to the accident involving the truck.

Thus, the issue is whether, with reasonable diligence, Woodhouse could have discovered and produced this evidence at the summary judgment hearing. "Newly discovered evidence is not sufficient reason for a new trial of a cause if diligence before

the trial would have produced notice or knowledge of the alleged recently discovered evidence." *Maddox v. First Westroads Bank*, 199 Neb. 81, 96, 256 N.W.2d 647, 656 (1977).

Woodhouse filed its petition on June 5, 2002, but did not serve its discovery requests on the Laflans until November 5. Some of the evidence claimed to be newly discovered concerned the accident involving the truck. However, it is clear that Woodhouse was aware that the truck had been involved in an accident. The accident was disclosed in Douglas' affidavit, which was dated more than a month before the summary judgment hearing and before Woodhouse served its discovery requests on the Laflans. If Woodhouse sought to prove that the Laflans were driving the truck and, therefore, acting in a manner inconsistent with Woodhouse's ownership, it could have, with reasonable diligence, discovered the odometer reading prior to the hearing. Woodhouse also could have obtained the police report and the insurance claim information through its own diligence.

The Laflans' discovery responses were mailed to Woodhouse on the day of the summary judgment hearing. Nearly 2 months passed between the hearing and the date when the district court sustained the Laflans' motion for summary judgment. During this time, Woodhouse could have asked the court to consider the Laflans' discovery responses before it issued its final order. Instead, Woodhouse waited until after the judgment had been entered.

We conclude that any material evidence presented by Woodhouse in support of its motion for new trial could have been discovered and produced at the summary judgment hearing or prior to entry of the judgment. As such, the district court did not abuse its discretion in overruling this motion.

## CONCLUSION

For the reasons stated above, the judgment of the district court is affirmed.

AFFIRMED.